UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MATTHEW PHILLIP ROBERTS,

                                        Plaintiff,

                        v.                                                    3:20-CV-365
                                                                               (FJS/ATB)

THE SAGE CORPORATION, JENIFER SIMPSON,
and NICK BURLINGAME,

                                        Defendants.

---

APPEARANCES                                    OF COUNSEL

STAGG WABNIK LAW GROUP LLP          AMANDA BROOKE SLUTSKY, ESQ.
401 Franklin Avenue, Suite 300             DEBRA L. WABNIK, ESQ.
Garden City, New York 11530
Attorneys for Plaintiff

BOND, SCHOENECK & KING,               ROBERT F. MANFREDO, ESQ.
PLLC                                             ERIC M. O'BRYAN, ESQ.
222 Corporate Woods Blvd, Suite 501
Albany, New York 12211
Attorneys for Defendants

SCULLIN, Senior Judge

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On November 25, 2019, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging discrimination, sexual harassment,

and retaliation based on sex. *See* Dkt. No. 22 at ¶ 7. On March 11, 2020, the EEOC dismissed

his Charge and issued a notice of right to sue letter; and Plaintiff commenced this action within

90 days of receipt of such EEOC notice. *See id.* at ¶¶ 8-9.

On March 31, 2020, Plaintiff filed a complaint against Defendants The SAGE Corporation ("SAGE"), Simpson, and Burlingame. *See* Dkt. No. 1. On November 25, 2020, Plaintiff filed an amended complaint in accordance with the Court's November 25, 2020 Stipulation and Order. *See* Dkt. Nos. 21-22.

In his amended complaint, Plaintiff asserted the following causes of action:

(1) Sex discrimination, pursuant to New York Executive Law § 296(1), against all of the Defendants (1st Cause of Action);

(2) Quid pro quo sexual harassment, pursuant to New York Executive Law § 296, against all of the Defendants (2nd Cause of Action);

(3) Retaliation, pursuant to New York Executive Law § 296, against all of the Defendants (3rd Cause of Action);

(4) Aiding and abetting, pursuant to New York Executive Law § 296, against Defendants Simpson and Burlingame (Fourth Cause of Action);

(5) Discrimination, pursuant to Title VII, against Defendant SAGE (Fifth Cause of Action); and

(6) Retaliation, pursuant to 42 U.S.C. § 12203,[1] against Defendant SAGE (6th Cause of Action).

*See id.* at ¶¶ 40-85.

Pending before the Court are Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim and Plaintiff's cross-motion to amend his amended complaint. *See* Dkt. Nos. 13, 18.

---

[1] Plaintiff corrects this statutory citation to the correct statutory section of Title VII, 42 U.S.C. § 2000e-3, in his Proposed Second Amended Complaint ("PSAC"). *See* Dkt. No. 18-4 at ¶¶ 72-80.

## II. DISCUSSION

### A.  Standard of review

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting [*Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955).  Therefore, under this standard, a plaintiff must support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged his claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

Around June 2018, Plaintiff began working as a truck driving instructor for Defendant SAGE, a private company that provides education and training to truck drivers seeking commercial driver's licenses, at its Endicott School, under the immediate supervision of Suzzette Cachilli until December 14, 2018, at which time Defendant Burlingame became his immediate supervisor.  In his amended complaint, Plaintiff alleges that Defendant Simpson, who temporarily supervised him on a traveling instructor assignment, sexually harassed him in July or

August 2018, and that Defendants thereafter subjected him to sex-based discrimination and a sex-based hostile work environment and retaliated against him for declining Defendant Simpson's sexual advances.

**B.  Title VII discrimination claims**

A plaintiff is only entitled to bring a Title VII claim for discriminatory acts that occur within the statutory period defined under 42 U.S.C. § 2000e-5(e)(1).  *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004).  Under 42 U.S.C § 2000e-5(e)(1), the statutory period to file a discrimination charge with the EEOC is 180 days after the alleged unlawful act occurred, unless the aggrieved party first initiates proceedings with a state or local agency authorized to provide relief, in which case the aggrieved party has 300 days to file a charge with the EEOC.  *See* 42 U.S.C. § 2000e-5(e)(1); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citation omitted).  The parties agree that the 300-day period applies.

The continuing violation exception to Title VII's statutory limitations period provides that, if a plaintiff timely files an EEOC charge regarding an employment action taken in furtherance of an ongoing policy of discrimination, all claimed discriminatory acts taken in furtherance of that policy will be timely regardless of whether they occurred within the statutory period.  *See Patterson*, 375 F.3d at 220 (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052, 114 S. Ct. 1612, 128 L. Ed. 2d 339 (1994)).  In other words, to state a claim under the continuing violation exception, a plaintiff "must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims." *Tiffany v. KDF Co., LLC*, No. 3:04-CV-0677,

2005 WL 2739137, *4 (N.D.N.Y. Oct. 24, 2005) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)).

However, the Second Circuit generally disfavors application of the continuing violation exception and will only do so in "compelling circumstances." *See id.* (quotation and other citation omitted). Additionally, the continuing violation exception will not apply when the untimely claims that a plaintiff seeks to bootstrap to the timely claims address "'*discrete* acts of discrimination or retaliation,'" *Patterson*, 375 F.3d at 220 (quoting [*Nat'l R.R. Passenger Corp. v.] Morgan*, 536 U.S. [101,] 105, 122 S. Ct. 2061 [(2002)] (emphasis added)), even if such acts are similar to one another, *see Bamba v. Fenton*, 758 F. App'x 8, 11 (2d Cir. 2018) (summary order) (quotation and other citation omitted).  Similarly, the continuing violation exception will not apply to untimely discrete acts that are taken "'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (summary order) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012)).

Plaintiff filed his EEOC charge on November 25, 2019, meaning that the 300-day statute of limitations precludes any of his claims based upon alleged conduct that occurred prior to January 29, 2019. *See* Dkt. No. 22 at ¶ 7.  Plaintiff does not contest that all of Defendants' alleged conduct that occurred during the time that Defendant SAGE employed him occurred prior to the January 29, 2019 statutory cut-off date. *See* Dkt. No. 18-6 at 9-10.  Rather, Plaintiff argues that his untimely allegations from the period when Defendant SAGE employed him are part of one continuing violation. *See id.* at 9-10.  Plaintiff maintains that such continuing violation includes Defendant Burlingame and other unnamed employees of Defendant SAGE retaliating against him until February 20, 2019, by contacting his subsequent employer, CVS

Ryder Company ("Ryder"), about him, thereby making all of the claimed conduct timely. *See id.* at 9-10. For the following reasons, this argument is unavailing.

### 1. *Sex-based disparate treatment*

Discrete acts are employment practices that occur at a single and "particular moment in time," rather than continuing over an extended time period. *See Port Auth. Police Asian Jade Soc'y of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey*, 681 F. Supp. 2d 456, 463 (S.D.N.Y. 2010) (citing [*Morgan*, 536 U.S.] at 113, 114, 118, 122 S. Ct. 2061). Therefore, by definition, discrete acts of discrimination or retaliation are not capable of forming a continuing violation. *See Cole v. New York State Dep't of Corr.*, No. 5:15-CV-876 (FJS/ATB), 2017 WL 1194233, *6 (N.D.N.Y. Mar. 30, 2017) (citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)) (other citation omitted).

According to Plaintiff, Ms. Cachilli assigned him to Defendant SAGE's Berwick School in July 2018, during which time Defendant Simpson became his direct supervisor and immediately began behaving inappropriately towards him. *See* Dkt. No. 22 at ¶¶ 17-18, 20-22. Defendant Simpson's behavior towards Plaintiff allegedly included (1) caressing his hair and neck and tugging on him upon meeting him; (2) calling his hotel room and making inappropriate comments to him while attempting to get him to go out to get a beer with her; (3) texting him about her "perky breasts" and sending him pictures of herself in a bikini; and (4) continuing to make undesired advances towards him during his first week at the Berwick School. *See id.* at ¶¶ 20-24. Plaintiff maintains that he regularly rejected Defendant Simpson's advances and that, as a result, Defendant Simpson was visibly upset and resented him. *See id.* ¶¶ 20-25.

Upon his Berwick School assignment ending, Plaintiff alleges that he was reassigned to a school in Syracuse, New York, in August 2018, but one-week later Ms. Cachilli informed him that Defendant Simpson had filed a sexual harassment complaint against him. *See id.* at ¶¶ 26-30. Plaintiff further alleges that he told Ms. Cachilli that it was actually Defendant Simpson who sexually harassed him, but he was still not permitted to return to his Syracuse assignment because Defendant Simpson retaliated against him by giving a negative review of him to Beverly Van Valkenburg, the director in charge of the Syracuse assignment and Ms. Cachilli's boss. *See id.* at ¶¶ 29-31. Additionally, Defendant Simpson allegedly retaliated against him further by (1) running an illegal background check on him; (2) claiming that he had multiple felonies, despite Defendant SAGE's Safety Department already clearing him; (3) giving him a negative performance review, despite never receiving any complaints against him; and (4) demanding that Ms. Cachilli and Ms. Van Valkenburg terminate him, which Ms. Cachilli refused to do. *See id.* at ¶¶ 32-33. Plaintiff alleges that, when Defendant Burlingame replaced Ms. Cachilli as his supervisor, Ms. Van Valkenburg told him to terminate Plaintiff, so he made Plaintiff a part-time employee by reducing his hours to four hours per week. *See id*. at ¶ 34. As a result of his reduced hours, Plaintiff claims that he was forced to resign on January 7, 2019. *See id.* at ¶ 35.

Despite his resignation, Plaintiff asserts that Defendant SAGE continued to retaliate against him when he subsequently got a job as a truck driver at Ryder. *See id.* at ¶ 36. For example, Plaintiff alleges that Defendant Burlingame falsely notified Ryder that Plaintiff had failed a drug test, which caused him to miss more than two weeks of work and lose income because Ryder did not permit him to work until he could prove that he had not failed a drug test. *See id.* at ¶¶ 36-37. Plaintiff contends that, until around February 20, 2019, Defendant SAGE continued to reach out to Ryder and falsely provide negative feedback about his work

performance and capacity as an employee. *See id.* at ¶ 38. As such, Plaintiff alleges that he was forced to resign from Ryder due to Defendant SAGE's retaliation. *See id.* at ¶ 39.

Based upon the above-described allegations, Plaintiff's untimely allegations from when he was working for Defendant SAGE began around July 2018 and include (1) Defendant Simpson's alleged sexual advances towards him at the end of July 2018 or beginning of August 2018; (2) Defendant SAGE's removal of him from his Syracuse assignment and more generally as a travel instructor around August 2018, (3) Defendant Simpson's alleged false negative performance review of him around August 2018, (3) Defendant Simpson's alleged illegal background check on him around August 2018, (4) Defendant Simpson's alleged demand that Ms. Cachilli and Ms. Van Valkenburg fire him, (5) Defendant Burlingame's alleged reduction of his hours, and (6) Defendant SAGE's constructive discharge of him when he resigned on January 7, 2019. *See id.* at ¶¶ 17-35. However, unwanted sexual advances, overtures, or touching; an undesirable removal from a specific assignment or one-time transfer to a new unit; negative performance evaluations; negative references to subsequent or potential employers; termination or, in this case, an unfulfilled request for the employer to terminate Plaintiff; reduction of work hours; and constructive discharge are all discrete acts that are incapable of forming the basis of a continuing violation for a discrimination or retaliation claim.[2] Likewise, conducting an "illegal"

---

[2] *See Morgan*, 536 U.S. at 114 (noting that termination is an easily identified discrete act); *Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018) (summary order) (stating that both discontinuing a particular job assignment and a one-time transfer to a new unit are discrete acts (quoting [*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229,] 239 [(2d Cir. 2007)]; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 100, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002))); *Bamba*, 758 F. App'x at 11 (holding that a negative reference from plaintiff's former employer was a discrete act); *Irrera v. Humpherys*, 695 F. App'x 626, 629 (2d Cir. 2017) (summary order) (holding that unwanted sexual touching is a discrete act); *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (summary order) (stating that "'termination through discharge or resignation'" is a discrete act (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997))); *Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (summary

background check on Plaintiff is a discrete act because it occurs at a single moment in time and is not ongoing.  As a result, all of Plaintiff's allegations from the period when Defendant SAGE employed him are untimely, discrete acts.

Plaintiff's only allegation that falls within the 300-day statutory limitations period is that Defendant Burlingame and other employees of Defendant SAGE contacted Ryder and falsely stated that he had failed a drug test, was not reliable, was not a good employee, and had disagreements with his coworkers.  *See* Dkt. No. 22 at ¶¶ 36-38.  However, this allegedly occurred after Plaintiff resigned on January 7, 2019, and Plaintiff is not entitled to assert a Title VII discrimination claim based upon post-employment conduct.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (noting that the scope of Title VII's substantive antidiscrimination provision is "explicitly limit[ed] . . . to actions that affect employment or alter the conditions of the workplace").  Thus, Plaintiff has failed to state a Title VII discrimination claim.  Accordingly, the Court grants Defendants' motion to dismiss his Title VII sex discrimination claim for disparate treatment.

---

order) (holding that a negative employment evaluation is a discrete retaliatory act); *Williams v. New York City Dep't of Educ.*, 1:19-cv-01353 (MKV), 2021 WL 1178118, *5 (S.D.N.Y. Mar. 29, 2021) (stating that "[n]egative performance evaluations and individual sexual overtures" are discrete acts (citations omitted)); *Robles v. Argonaut Restaurant & Diner, Inc.*, No. 05 CV 5553 (JSR), 2009 WL 3320858, *9 n.8 (S.D.N.Y. Oct. 9, 2009) (stating that "hostile work environment claims 'are different in kind from discrete acts'" such as "wage reduction, termination, and hours reduction" (quoting *Morgan*, 536 U.S. at 115)); *Baird v. Outlook Pointe*, No. 4:07-CV-1580, 2008 WL 4287382, *6 (M.D. Pa. Sept. 17, 2008) (stating that allegation of reduced hours was a discrete act of retaliatory discrimination); *Allen v. Egan*, 359 F. Supp. 2d 220, 223 (D. Conn. 2005) (stating that plaintiff's allegation of reduced hours was a discrete discriminatory act).

## 2. *Hostile work environment*

In contrast to Title VII discrimination and retaliation claims, hostile work environment claims involve a repetitive pattern of conduct, rather than discrete acts.  Therefore, by their nature, hostile work environment claims more easily lend themselves to application of the continuing violation doctrine.  *See Williams v. New York City Dep't of Educ.*, No. 19 Civ. 1353 (CM), 2019 WL 4393546, *7 (S.D.N.Y. Aug. 28, 2019) (citing *Rivas v. N.Y. State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004))); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).  It is axiomatic, however, that incidents occurring after a plaintiff's employment has ended cannot contribute to his hostile work environment.  *See Oliver v. Penny*, No. 1:19-cv-00233 (BKS/DJS), 2020 WL 7316125, *13 n.15 (N.D.N.Y. Dec. 11, 2020) (citing *Ruggerio v. Dynamic Elec. Sys. Inc.*, No. 12-cv-100, 2012 WL 3043102, *9, 2012 U.S. Dist. LEXIS 103940, at *27-28 (E.D.N.Y. July 25, 2012) ("The January 2011 reference had not effect upon plaintiff's work environment, her working conditions or her ability to perform her job -- the hallmarks of a hostile work environment -- because her employment ended in January 2010.")); *Lonergan-Milligan v. New York State Off. of Mental Health*, No. 14-CV-274S, 2018 WL 6605686, *2 n.3 (W.D.N.Y. Dec. 17, 2018) (stating that "it is well established that a Plaintiff cannot rely on events that occurred after her departure from the workplace to establish a hostile work environment (collecting cases)); *Fox v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 1:06-CV-1135 (LEK/RFT), 2009 WL 425806, *6 (N.D.N.Y. Feb. 19, 2009) (citations omitted).

As discussed above, the only allegations Plaintiff has made that address conduct occurring within the 300-day statutory period are Defendants' alleged calls to Ryder.  However, Plaintiff cannot rely on these allegations to support his hostile work environment claim because

they occurred after he had already left his position with Defendant SAGE on January 7, 2019.

As a result, Plaintiff's continuing violation argument fails because there are no timely allegations

to which he may attach his untimely allegations; and, thus, the Court grants Defendants' motion

to dismiss Plaintiff's Title VII hostile work environment claim.

## C.  Title VII retaliation claim

As discussed above, all of Plaintiff's allegations from the time Defendant SAGE

employed him are untimely; and, as discrete acts, they cannot form the basis of a continuing

violation to state a retaliation claim.  Therefore, Plaintiff's only timely allegation is that

Defendant Burlingame and other employees of Defendant SAGE contacted Ryder to provide a

negative reference and falsely inform it that Plaintiff had failed a drug test.  However, unlike

Title VII discrimination claims, a plaintiff is entitled to assert a Title VII retaliation claim based

upon post-employment conduct.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 64 (stating

that "the antiretaliation provision, unlike the substantive provision, is not limited to

discriminatory actions that affect the terms and conditions of employment" (citations omitted));

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (holding that "former employees are

included within [the Title VII antiretaliation provision's] coverage"); *Oliver*, 2020 WL 7316125,

at *14 (stating that "'[a] negative reference or similar actions taken with respect to a new

prospective employer can be considered an adverse action and therefore provide support for a

retaliation claim'" (quoting *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017

4273292, at *5, 2017 U.S. Dist. LEXIS 157346, at *13-14 (D. Conn. Sept. 26, 2017))) (other

citations omitted).  Therefore, the Court finds that Plaintiff has made allegations that are timely

for purposes of his Title VII retaliation claim.

Under Title VII, employers are prohibited from retaliating against employees for complaining about employment discrimination.  *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  A prima facie retaliation claim requires a showing that "(1) [the plaintiff] was engaged in protected activity; (2) the employer was aware of that activity; (3) the [plaintiff] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Department of Social Services*, 461 F.3d 199, 205-06, 207-10 (2d Cir. 2006) ("*Kessler*")) (other citation omitted).  For a retaliation claim to survive a Rule 12(b)(6) motion, the plaintiff is merely required to give the defendants fair notice of the retaliation claims and the grounds on which he bases such claims.  *See Viscecchia v. Alrose Allegria LLC*, 117 F. Supp. 3d 243, 256 (E.D.N.Y. 2015) (citing *Swierkiewicz [v. Sorema N.A.]*, 534 U.S. [506,] 512 [(2002)]).

As to the first element, Plaintiff alleges that he complained to Ms. Cachilli about Defendant Simpson's sexual advances towards him; and Defendants do not dispute that this was a protected activity.  Therefore, Plaintiff has satisfied the first element.

As to the second element, a plaintiff is only required to show that his employer has "general corporate knowledge" that he engaged in the protected activity, which may be satisfied when a supervisor has knowledge of the protected activity.  *See Arroyo-Horne v. City of New York*, No. 16-CV-03857 (MKB), 2018 WL 4259866, *17 (E.D.N.Y. Sept. 5, 2018) (citing *Summa [v. Hofstra Univ.]*, 708 F.3d [115,] 125-26 [(2d Cir. 2013)] (holding that "[n]othing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" (citation and internal quotation marks omitted)); *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (holding that a discrimination complaint to an officer of the

defendant-corporation imputed "general corporate knowledge of the plaintiff's protected activity" to the corporation)) (other citation omitted).  Plaintiff alleges that he complained about Defendant Simpson's conduct to Ms. Cachilli, who was his supervisor at the time.  This is sufficient at the motion to dismiss stage to impute general corporate knowledge to Defendant SAGE.

With regard to the third element, a negative or false employment reference may be considered an adverse employment action.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2d Cir. 2005); *Oliver*, 2020 WL 7316125, *14 (stating that a "'negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim'" (quoting *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 4273292, at *5, 2017 U.S. Dist. LEXIS 157346, at *13-14 (D. Conn. Sept. 26, 2017))) (other citations omitted).  Thus, Plaintiff's allegation that Defendant Burlingame and other employees of Defendant SAGE contacted his subsequent employer, Ryder, to speak negatively about Plaintiff's job performance and to state that he had failed a drug test satisfies the third element.

With regard to the fourth element, a plaintiff can show the requisite causal connection between the protected activity and the adverse employment action "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Although the Second Circuit has indicated that there is no bright-line outer limit for indirectly proving a connection through

temporal proximity, most courts within this Circuit have generally found that three months is usually the outer limit unless a plaintiff provides other indicia of retaliatory motive.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (quotation omitted); *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 130 (N.D.N.Y. 2019) (citation omitted); *Lambert v. Trump Int'l Hotel and Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (quotation and other citations omitted).

Plaintiff does not allege sufficient facts for the Court to infer a causal connection between his complaint about Defendant Simpson's conduct in August 2018 and the statements that Defendant Burlingame and other employees made to Ryder.  Furthermore, Plaintiff does not provide approximate dates of when Defendant Simpson allegedly took her retaliatory actions against him for complaining, which makes it difficult for the Court to evaluate whether a causal connection based upon temporal proximity exists.[3]  As currently pled without approximate dates, it is reasonable to infer that Plaintiff's Berwick School assignment ended no later than two weeks into August 2018, he complained to Ms. Cachilli one week later, and within the next two- to three-weeks after such complaint (1) an unnamed individual removed Plaintiff as a traveling driving instructor; (2) Defendant Simpson gave a negative performance review of Plaintiff and conducted an "illegal background check" on him; and (3) Defendant Simpson requested that both Ms. Cachilli and Ms. Van Valkenburg fire him, which neither supervisor did.  *See* Dkt. No. 22 at ¶¶ 27-34.  Based on this approximate timeline, the Court could reasonably infer that the last of Defendant Simpson's retaliatory actions occurred around mid-September 2018.

---

[3] Although all of Plaintiff's allegations occurring prior to January 7, 2019, are untimely, they are relevant to analyzing whether Plaintiff plausibly alleged a causal connection between his complaint and his allegation that Defendant Burlingame and other employees made negative statements about him to Ryder.

Plaintiff attempts to causally connect his August 2018 complaint with the statements that Defendant Burlingame and other employees of Defendant SAGE made after January 7, 2019, by arguing that all of the alleged acts are retaliatory because they all occurred after he complained and directly demonstrate "ongoing antagonism." *See* Dkt. No. 18-6 at 20-22. However, Plaintiff does not allege that Defendant Burlingame took any retaliatory actions against him until becoming the Director of the Endicott School on December 14, 2018, at which time he allegedly reduced Plaintiff's hours at Ms. Van Valkenburg's request. *See* Dkt. No. 22 at ¶¶ 34-38. Plaintiff's only direct allegation connecting Defendant Burlingame's alleged actions with his complaint or Defendant Simpson's alleged retaliatory actions is his conclusory allegation that Defendant Burlingame reduced his hours when Ms. Van Valkenburg contacted him "to carry out [Defendant] Simpson's nefarious goal of terminating Plaintiff." *See id.* at ¶ 34. Plaintiff's allegation requires the Court to infer that Ms. Van Valkenburg either had her own animus, or harbored Defendant Simpson's animus, against Plaintiff for about three months until she requested that Defendant Burlingame terminate Plaintiff. This is an unreasonable inference to draw, especially in light of Plaintiff's allegation that Ms. Van Valkenburg "never once took issue with Plaintiff's performance, and even gave Plaintiff a glowing recommendation." *See id.* at ¶ 33.

Given the lack of connection between Plaintiff's complaint and Defendant Burlingame's initial action of reducing his hours, it is likewise difficult to establish a causal connection between the complaint and the alleged adverse employment action, *i.e.*, the negative employment references that Defendant Burlingame and other employees provided to Ryder. Plaintiff merely makes a conclusory allegation that Defendant SAGE "continued to retaliate against him" by contacting Ryder without demonstrating how such continued retaliation was connected to either

his original complaint to Ms. Cachilli or Defendant Simpson's initial retaliatory acts.  *See id.* at ¶¶ 36-38.  For example, Plaintiff failed to allege facts indicating how the statements that Defendant Burlingame and the other employees allegedly made to Ryder were connected to the negative performance review and "illegal background check" on him that Defendant Simpson made at least four months prior.  Plaintiff did not allege that Defendant Burlingame mentioned to Ryder the alleged felonies revealed in the background check.

Likewise, Plaintiff did not allege facts that allow the Court to draw a reasonable inference that the statements made to Ryder about his negative job performance were "based on discriminatory animus or for retaliatory reasons," as opposed to legitimate observations that Defendant Burlingame and the other employees made on their own.  *See Jones v. Bloomingdale's*, No. 17-CV-1974 (RA), 2018 WL 1281819, *5 (S.D.N.Y. Mar. 8, 2018) (holding that plaintiff failed to allege facts that permit the court to infer that negative references made by former employer's employees were "based on discriminatory animus or for retaliatory reasons").  In addition, by Plaintiff's own allegations, the statements that Defendant Burlingame and other employees made to Ryder involved his on-the-job performance; and he does not allege that his complaint to Ms. Cachilli was discussed with Ryder.  *See Abreu v. New York City Police Dep't*, 329 F. App'x 296, 298 (2d Cir. 2009) (summary order) (holding that plaintiff failed to establish a causal connection between his EEOC complaint and negative statements made to his subsequent employer because the statements concerned plaintiff's "on-the-job conduct" and did not mention his EEOC complaint).

Moreover, based on the above timeline, Defendant Burlingame allegedly reduced Plaintiff's hours three months after Defendant Simpson's last retaliatory act and four months after Plaintiff actually complained to Ms. Cachilli.  *See* Dkt. No. 22 at ¶¶ 29-34.  It was then allegedly

another three to four weeks before Defendant Burlingame and other employees allegedly committed the relevant adverse employment action by contacting Ryder, which widens the temporal gap to about four months after Defendant Simpson's last retaliatory act, and about five months after the relevant protected activity, *i.e.*, Plaintiff's complaint to Ms. Cachilli.  This gap is insufficient to establish a causal connection without anything more than a conclusory allegation that Ms. Van Valkenburg contacted Defendant Burlington to carry out "Simpson's nefarious goal."  *See Mills-Sanchez v. Research Found. for State Univ. of New York*, No. 1:18-cv-723 (GLS/DJS), 2019 WL 2549726, *7-*12 (N.D.N.Y. June 20, 2019), *aff'd*, 820 F. App'x 63 (2d Cir. 2020) (summary order) (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (noting that "the Second Circuit has held that temporal proximity of three months is not sufficient to satisfy the causal connection element")); *Deebs v. Alstom Transp., Inc.*, 550 F. Supp. 2d 385, 393 (W.D.N.Y. 2008) (noting that "'district courts within the Second Circuit have consistently held that passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation'" (quoting *Murray v. Visiting Nurse Servs. of New York*, 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007))).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Title VII retaliation claim because he has not plausibly alleged a causal connection between his August 2018 complaint and his only timely allegation of an adverse employment action in January and February 2019.

**D.  Plaintiff's cross-motion for leave to amend his amended complaint**

Plaintiff filed a cross-motion for leave to amend his amended complaint with his proposed Second Amended Complaint ("PSAC") attached as an exhibit.  *See* Dkt. No. 18-4; Dkt. No. 18-6 at 24-25.  Federal Rule of Civil Procedure 15(a)(2) provides that courts should freely grant a plaintiff leave to amend his complaint when justice so requires.  *See Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (citing Fed. R. Civ. P. 15(a)(2)).  However, courts should deny leave to amend as futile where the proposed amended complaint is unable to survive a motion to dismiss.  *See id.* (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)); *Cottone v. Does*, No. 1:17-cv-1006 (DNH/TWD), 2018 WL 2021513, *4 (N.D.N.Y. Apr. 30, 2018) (citing *Nettis [v. Levitt]*, 241 F.3d [186,] 194 n.4 [(2d Cir. 2001)]).

Plaintiff's PSAC is largely the same as his complaint and amended complaint.  In relevant part, Plaintiff has merely added slightly more details regarding the authority Defendants Simpson and Burlingame had as the supervisor of the Berwick school and the Director of the Endicott School, respectively.  *See* Dkt. No. 18-4 at ¶¶ 12-13.  Additionally, Plaintiff added conclusory allegations that (1) Defendant Simpson "manipulated [Ms.] Van Valkenburg and [Defendant] Burlingame to take adverse action against [him]"; (2) Defendant SAGE "acted based solely on [Defendant] Simpson's retaliatory and discriminatory animus, namely as Simpson's 'cat's paw'"; and (3) Defendant Simpson's discriminatory and retaliatory acts were the but-for cause of his removal as a traveling instructor, Defendant Burlingame's reduction of his hours, and his alleged constructive discharge.  *See id.* at ¶¶ 34-35.  These new allegations address a cat's paw theory of liability.

Given that Plaintiff's only timely allegation is a post-employment act, the only federal claim to which the cat's paw theory in his PSAC could apply is his Title VII retaliation claim. However, even applying the cat's paw theory to Plaintiff's retaliation claim, the Court finds that his proposed amendments are futile for the reasons that follow.

The cat's paw theory of liability requires the plaintiff to establish that he was "'fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action.'" *Edwards v. Rochester Inst. of Tech*, No. 10-CV-6553-FPG, 2018 WL 1569357, *23 (W.D.N.Y. Mar. 29, 2018) (quoting [*Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267,] 272 [(2d Cir. 2016)]).  A plaintiff will only succeed under a cat's paw theory "when an employer in effect adopts an employee's unlawful animus by acting *negligently* with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision[.]" *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 275 (2d Cir. 2016).  Thus, an employer will be liable under the cat's paw theory when its "'decisionmakers are overly deferential to the biased individual's recommendations.'" *Zagaja v. Vill. of Freeport*, No. 10-cv-3660 (JFB)(WDW), 2013 WL 2405440, *12 (E.D.N.Y. June 3, 2013) (quotation and other citations omitted).

Plaintiff alleges in his PSAC that Defendant Simpson "manipulated" Ms. Van Valkenburg and Defendant Burlingame to take adverse action against him.  *See* Dkt. No. 18-4 at ¶ 34.  Similarly, Plaintiff argues in his opposition to Defendants' motion that Defendant "Simpson's conduct continued when she . . . engaged at least three employees, [Ms.] Cachilli, [Defendant] Burlingame, and [Ms.] Van Valkenburg, to end Plaintiff's employment."  *See* Dkt.

No. 18-6 at 21.  This allegation is insufficient as it discusses other alleged adverse actions that Defendants took against him yet fails to address the ultimate adverse employment action at issue, namely Defendant Burlingame and others contacting Ryder.  Additionally, the manipulation allegation is insufficiently conclusory because it simply states that Defendant Simpson "manipulated" Defendant Burlingame and Ms. Van Valkenburg without providing any facts to indicate how Defendant Simpson influenced these employees' employment decisions.  Similarly, Plaintiff's allegation that Defendant Simpson's actions were the but-for cause of his reduced hours, removal as a driving instructor, and constructive discharge fails to both address the ultimate adverse employment action at issue and provide facts indicating how Defendant Simpson's actions were the but-for cause of such incidents.  *See id.* at ¶ 35.  Notably, in the four paragraphs of the PSAC that immediately follow Plaintiff's "manipulation" and "but-for" allegations, he reiterates verbatim his original allegation that Defendant Burlingame and other employees contacted Ryder, but he omits any allegation that Defendant Simpson was involved at all in these actions that Defendant Burlingame and the other employees took.  *See id.* at ¶¶ 36-39.

Furthermore, Plaintiff's PSAC does not contain nonconclusory allegations that indicate Defendant Simpson even had the ability to influence decisionmakers at Defendant SAGE, especially considering the fact that she had been 4 to 5 months removed from supervising Plaintiff at the time the alleged adverse employment action occurred.  *See Edwards*, 2018 WL 1569357, at *23-*24 (granting summary judgment to dismiss the plaintiff's cat's paw retaliation claim where the employee who allegedly influenced the plaintiff's supervisor no longer had authority or supervision over the plaintiff, and the plaintiff did not demonstrate how such employee influenced his supervisor's decision).

In support of his cat's paw argument, Plaintiff cites ¶¶ 31-34 of his Amended Complaint as evidence of Defendant Simpson's ability to influence Defendant SAGE's decisionmakers, but those paragraphs merely contain conclusory allegations that Defendant Simpson's retaliatory actions were the reason that Plaintiff was subjected to his alleged removal as a traveling instructor and reduced hours and, again, fail to tie Defendant Simpson's influence to the much later contact that Defendant Burlingame made with Ryder. *See* Dkt. No. 18-6 at 18 (citing Dkt. No. 22 at ¶¶ 31-34). Additionally, Plaintiff has not alleged that Defendant Simpson actually requested any of Defendant SAGE's employees to take an adverse action against Plaintiff after she unsuccessfully attempted to have Ms. Cachilli and Ms. Van Valkenburg terminate him in August or September 2018. Thus, it is unclear how Defendant Simpson influenced Defendant SAGE's decisionmakers to provide Ryder with negative statements about Plaintiff in January or February 2019. *See Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020) (summary order) (holding that plaintiff's conclusory allegation was insufficient to state a retaliation claim); *Garvey v. Childtime Learning Ctr.*, No. 5:16-CV-1073 (TJM/ATB), 2017 WL 2535851, *4 (N.D.N.Y. Apr. 21, 2017) (stating that "[c]onclusory allegations are insufficient to state a claim under the civil rights statutes" (citation omitted)).

Accordingly, the Court finds that Plaintiff's PSAC still fails to state a plausible Title VII retaliation claim because he has not plausibly alleged a causal connection between his complaint to Ms. Cachilli and the negative statements that Defendant Burlingame and other employees made to Ryder about him, either directly or under a cat's paw theory. *See Edwards*, 2018 WL 1569357, at *23-*24 (holding that retaliation claim based upon a cat's paw theory failed where plaintiff did not establish the causal connection element); *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, *23-*24 (E.D.N.Y. Sept. 24, 2014) (holding that

the causal connection element was not met where the plaintiff failed to demonstrate that the decisionmakers who took the adverse employment action were influenced or encouraged by an employee with knowledge of the protected activity).  Thus, the Court denies Plaintiff's cross-motion for leave to amend his amended complaint as futile.


**E.  Supplemental jurisdiction**

When a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a plaintiff's remaining state-law claims *sua sponte*.  *See* 28 U.S.C. § 1367(c)(3); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 111-12 (N.D.N.Y. 2016) (citations omitted).  In deciding whether to exercise supplemental jurisdiction, courts balance "the traditional 'values of judicial economy, convenience, fairness, and comity[.]'"  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting [*Carnegie-Mellon Univ. v.] Cohill*, 484 U.S. [343,] 350, 108 S. Ct. 614 [(1988)]). Generally, where a court dismisses all original jurisdiction claims prior to trial, the factors will weigh in favor of the court declining to exercise supplemental jurisdiction over the remaining state-law claims.  *See id.* (quoting [*Cohill*,] 484 U.S. at 350 n.7, 108 S. Ct. 614) (other citation omitted).

Given that the Court has granted Defendants' motion to dismiss Plaintiff's Title VII sex discrimination, hostile work environment, and retaliation claims and denied Plaintiff's cross-motion to amend his amended complaint, the only remaining claims are Plaintiff's state-law claims.  Therefore, based upon a balancing of the four factors and considering that the instant action is at the motion to dismiss stage, the Court declines to exercise supplemental jurisdiction

over Plaintiff's remaining state-law claims and dismisses such claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title VII sex discrimination, hostile work environment, and retaliation claims against them, *see* Dkt. No. 13, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion to amend his amended complaint, *see* Dkt. No. 18, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's state-law claims for (1) sex discrimination, pursuant to New York Executive Law § 296; (2) quid pro quo sexual harassment, pursuant to New York Executive Law § 296; (3) retaliation, pursuant to New York Executive Law § 296; and (4) aiding and abetting, pursuant to New York Executive Law § 296, are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: August  16, 2021
　　　Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge